1

2

3
FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2020

4
SEAN F. McAVOY, CLERK

5
## UNITED STATES DISTRICT COURT

6
## EASTERN DISTRICT OF WASHINGTON

7
OLIVIA M.,[1]
                    Plaintiff,

No. 4:19-cv-05211-MKD

8
    vs.

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY

9

10
ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

11
                    Defendant.

ECF Nos. 14, 15

12
        Before the Court are the parties' cross-motions for summary judgment. ECF

13
Nos. 14, 15.  The parties consented to proceed before a magistrate judge.  ECF No.

14
7.  The Court, having reviewed the administrative record and the parties' briefing,

15

16

17

18
[1] To protect the privacy of plaintiffs in social security cases, the undersigned

19
identifies them by only their first names and the initial of their last names.  *See*

20
LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

2  motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

3                                                **JURISDICTION**

4          The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

5                                        **STANDARD OF REVIEW**

6          A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

10 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11 reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

12 (quotation and citation omitted).  Stated differently, substantial evidence equates to

13 "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

14 citation omitted).  In determining whether the standard has been satisfied, a

15 reviewing court must consider the entire record as a whole rather than searching

16 for supporting evidence in isolation.  *Id.*

17         In reviewing a denial of benefits, a district court may not substitute its

18 judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

19 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20 rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

4    capable of performing other work; and 2) such work "exists in significant numbers

5    in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

6    386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

8    On July 10, 2015, Plaintiff applied for Title II disability insurance benefits

9    alleging a disability onset date of September 13, 2013.  Tr. 18, 73, 161-67.  The

10   application was denied initially and on reconsideration.  Tr. 100-02, 104-06.

11   Plaintiff appeared before an administrative law judge (ALJ) on June 12, 2018.  Tr.

12   36-72.  On July 30, 2018, the ALJ denied Plaintiff's claim.  Tr. 15-33.

13   At step one of the sequential evaluation process, the ALJ found Plaintiff,

14   who met the insured status requirements through December 31, 2018, had not

15   engaged in substantial gainful activity since September 13, 2013.  Tr. 20.  At step

16   two, the ALJ found that Plaintiff had the following severe impairments: history of

17   carpal tunnel syndrome of the right upper extremity, status-post cubital and carpal

18   tunnel surgery; mild to moderate carpal tunnel syndrome of the left upper

19   extremity, and arthritis of the knees and low back.  Tr. 20.

20

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff has] a standing and/or walking capacity of two hours total in an eight-hour workday. She can never climb ladders, ropes, or scaffolds, and can only occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. She cannot push, pull, or reach overhead with the right upper extremity, but she could frequently handle and finger, and she must avoid all exposure to unprotected heights and use of moving or dangerous machinery.

Tr. 22-23.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a medical record auditor, medical record coder, and hospital collection clerk. Tr. 26-27. In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as telephone information clerk and document preparer. Tr. 27. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from September 13, 2013, the alleged onset date, through the date of the decision. Tr. 27.

On June 17, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ conducted a proper step-two analysis;

4.  Whether the ALJ conducted a proper step-three analysis;

5.  Whether the ALJ conducted a proper step-four analysis; and

6.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 7.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Adrian Heap, M.D. and Andrea Shadrach, Psy.D.  ECF No. 14 at 10-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

ORDER - 8

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER - 9

1

2      *1. Dr. Heap*

3      Plaintiff's treating physician, Adrian Heap, M.D., completed a medical

4      source statement on January 2, 2018.  Tr. 884-86.  Dr. Heap was Plaintiff's treating

5      physician from 2012 until 2017.[2]  Tr. 884.  Dr. Heap diagnosed Plaintiff with

6      chronic regional plain complex of the right arm and hand secondary to ulna nerve

7      decompression and carpal tunnel release surgery in September 2011.  Tr. 884.  Dr.

8      Heap described Plaintiff as having arm pain from the elbow to right hand, "severe

9      neuropathic symptoms," and developed mild arthritis symptoms in her knees and

10     back.  *Id.*  Dr. Heap opined that Plaintiff needed to lie down during the day due to

11     fatigue, pain, and narcolepsy symptoms.  *Id.*  Dr. Heap indicated Plaintiff's

12     prognosis was poor due to "chronicity" and her "inability to pay for long term

13     therapy."  *Id.* at 886.  Dr. Heap opined that regular and continuous work would

14     cause Plaintiff's condition to deteriorate due to aggravation of pain with use; that it

15     was more probable than not Plaintiff would miss four or more days of work per

16     month due to exacerbation of neuropathic symptoms due to repetitive motion; and

17     _____

18     [2] The record contains Dr. Heap's handwritten treatment notes dated April 26, 2012

19     through December 19, 2017, documenting 79 visits.  Tr. 788-96, 878-83; Tr. 46-47

20     (noting frequency of visits).  The ALJ's decision erroneously states Dr. Heap only

       treated Plaintiff until 2016.  Tr. 25.

ORDER - 10

1  that her limitations have existed since April 2013.  *Id.* at 885.  Dr. Heap also

2  checked the description of "light work" as the exertional level Plaintiff could

3  perform, other than the ability to lift 20 pounds maximum.  *Id*.  Dr. Heap

4  commented Plaintiff has a chronic disabling condition, and that Plaintiff may be

5  able to seek help at a regional pain center if she had the funds or insurance

6  available.  *Id.* at 886.

7      The ALJ gave Dr. Heap's opinion little weight.  Tr. 25.  Because Dr. Heap's

8  opinion (regarding the need to lie down, absenteeism, and the exacerbation of

9  symptoms due to repetitive motions) was contradicted by the opinions of James

10  Irwin, M.D., Tr. 93-95, James Gaddy, M.D., Tr. 804-08, and Kingsley Ugorji,

11  M.D, Tr. 820-26, the ALJ was required to provide specific and legitimate reasons

12  for discounting Dr. Heap's opinion.  *Bayliss*, 427 F.3d at 1216.

13          a. Unsupported by Treatment Notes

14      Dr. Heap's treatment notes, which document approximately 74 office visits

15  over a five-year period, are handwritten and include the date of treatment and a

16  short statement.  Tr. 788-96; Tr. 878-83.  The ALJ accorded little weight to Dr.

17  Heap's assessment because his treatment notes were "incredibly limited and [were]

18  not legible."  Tr. 25.  Though the ALJ found the notes illegible, the ALJ did not

19  attempt to obtain some readable form of the records.

20

ORDER - 11

1    A medical opinion may be rejected if it is unsupported by medical findings.

2    *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

3    1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002);

4    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*,

5    981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be

6    rejected if it is unsupported by the physician's treatment notes.  *Connett v.*

7    *Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Relevant factors to evaluating any

8    medical opinion include the amount of relevant evidence that supports the opinion,

9    the quality of the explanation provided in the opinion, and the consistency of the

10   medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028,

11   1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

12   Plaintiff contends the ALJ erred because an independent examination of Dr.

13   Heap's treatment notes reveals they are neither limited nor illegible, and they set

14   forth probative notes:

15   For example, (1) on December 12, 2013, Dr. Heap noted that the weather
     was making her hand worse (Tr. 793); (2) on January 13, 2014, he noted a

16   diagnosis of regional pain syndrome in her arm (Tr. 793); (3) on February
     11, 2014, he found that she required an ergonomic keyboard (Tr. 793); (4)

17   on October 9, 2014, he noted aching in her arm with the onset of cold
     weather (Tr. 794); (5) on November 25, 2014, he noted that she was unable

18   to cope with her pain while off her medications since November 4, 2014 (Tr.
     795); (6) on February 17, 2015, he noted carpal tunnel symptoms (Tr. 795);

19   (7) on August 6, 2015, he noted pain in her right arm from yard work (Tr.
     796); (8) on September 24, 2015, he noted left arm symptoms and arthritis of

20   her knees (Tr. 878); (9) on October 22, 2015, he noted increasing symptoms
     in her right arm, including neuropathic symptoms, as well as pain in her

ORDER - 12

knees (Tr. 878); (10) on December 21, 2015, he noted pain, severe headache, and anxiety (Tr. 878); (11) on May 12, 2016, he noted continuous arm pain (Tr. 879); (12) on November 4, 2016, he noted breakthrough pain in her arm and back, with lack of sleep due to pain (Tr. 880); and (13) on October 26, 2017, he noted that her arm pain was not controlled (Tr. 883).

ECF No. 14 at 11-13. Plaintiff contends the legible parts of the notes are consistent with Dr. Heap's opinion and the ALJ erred in summarily dismissing it based on brevity and legibility.

Dr. Heap's treatment notes are not wholly indecipherable, though they are certainly difficult to read and many are illegible.[3]  However, even assuming the notes were entirely illegible as reasonably found by the ALJ, the issue on review is not whether or not the ALJ's assessment of legibility was correct, but rather whether the record was inadequate to allow proper evaluation of medical evidence, including Dr. Heap's opinion.  "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996)) (internal quotation marks omitted).  This duty is "triggered when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v.*

---

[3] In consultative examiner James Gaddy's December 3, 2015 physical evaluation, he also noted that Dr. Heap's records were "essentially illegible."  Tr. 804.

ORDER - 13

1   *Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Thomas*, 278 F.3d at 958.  "An ALJ

2   is required to recontact a doctor only if the doctor's report is ambiguous or

3   insufficient for the ALJ to make a disability determination." *Bayliss*, 427 F.3d at

4   1217.  "A specific finding of ambiguity or inadequacy of the record is not

5   necessary to trigger this duty to inquire, where the record establishes ambiguity or

6   inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *see Williams v.*

7   *Astrue*, ED CV 08–549–PLA, 2010 WL 431432 (C.D. Cal. Feb. 1, 2010) ("the

8   ALJ's finding that [doctor's] treatment notes were unclear or illegible . . . should

9   have triggered his duty to clarify those ambiguities.").

10          Here, the ALJ's duty to further develop the record was triggered because the

11   medical evidence at issue was inadequate to allow for proper evaluation of the

12   medical evidence. *Tonapetyan,* 242 F.3d at 1150; *Mayes,* 276 F.3d at 459-60.  Dr.

13   Heap was the only treating source to provide a medical opinion regarding

14   Plaintiff's physical impairments, and his treatment notes span the period between

15   the time of Plaintiff's alleged disability onset until six months prior to the date of

16   the administrative hearing.  Tr. 47.  His opinion is also the most recent medical

17   opinion.  Tr. 886.  The RFC found Plaintiff capable of sedentary work involving

18   frequent handling and fingering.  Tr. 22.  Although the ALJ acknowledged Dr.

19   Heap was Plaintiff's treating physician, the ALJ's RFC did not account for any

20   impact of Plaintiff's regional pain complex of the right arm and hand, Dr. Heap's

ORDER - 14

finding that use of her right arm and hand aggravates her pain, or his opinion

Plaintiff would likely be absent from work on average four or more days a month.

Tr. 885.  Based on the length of treatment relationship and frequency of visits, Dr.

Heap was in the best position to opine on Plaintiff's physical condition.  *See*

*Lester*, 81 F.3d at 833 (treating physician's continuing relationship makes him

"especially qualified" to form a conclusion as to functional capacities and

limitations).  The ALJ gave great weight to the May 2, 2016 physical functional

evaluation of Kingsley Ugorji, M.D., who evaluated Plaintiff only once.  Tr. 25,

842-44.  Yet, Dr. Ugorji's patient instructions in the encounter note associated with

the evaluation state: "your right hand problems [] should limit [you] from do[ing]

any job that requires repeated use with [it]."  Tr. 846.  Accordingly, in this case,

the Dr. Heap's treatment notes spanning a period of five years may be

consequential to the ultimate determination of the Plaintiff's limitations.  The

tension, if any, between the ALJ's duty to develop the record and the Court's duty

to uphold the ALJ's conclusion where evidence is susceptible to more than one

rational interpretation, is resolved in favor of the Plaintiff in this case.  Other courts

have held that illegibility was not a proper basis to disregard medical evidence of

this level of importance to the matter.  *See Manso-Pizarro v. Sec'y of Health &*

*Human Servs.*, 76 F.3d 15, 19 (1st Cir. 1996) (holding that "unreadable entries may

have some import" and "it is the duty of the ALJ, on remand, to make some effort

ORDER - 15

to decipher them"); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)

("Where the medical records are crucial to the claimant's claim, illegibility of

important evidentiary material has been held to warrant a remand for further

clarification and supplementation."); *Miller v. Heckler*, 756 F.2d 679, 680 (8th Cir.

1985) ("Where the medical records are crucial to the plaintiff's claim, illegibility

of important evidentiary material has been held to warrant a remand for

clarification and supplementation."); *see also Garcia v. Colvin*, No. CV 14-02528-

GW(KS), 2015 WL 7573653, at *8 (C.D. Cal. Nov. 25, 2015) (citing *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where a "physician's documentation

is illegible and, therefore, inadequate to allow for proper evaluation of the medical

evidence, the ambiguity triggers the ALJ's duty to develop the record."); *Armenta*

*v. Astrue*, No. CV 11-10652-PLA, 2012 WL 4512491, at *6 (C.D. Cal. Oct. 1,

2012) (finding the ALJ failed to discharge his duty to recontact Plaintiff's treating

physician for legible treatment records by simply continuing the administrative

hearings and ordering a consultative examination); *Grice v. Astrue*, No. CIV.A. 12-

3502, 2013 WL 2062263, at *3 (E.D. Pa. May 15, 2013) (finding reversible error

where the ALJ disregarded relevant treatment notes on the basis of illegibility);

*Lewis v. Chater*, No. 95 Civ 5400 (WK), 1996 WL 752929 (S.D.N.Y. Dec. 2,

1996) (given the ALJ's duty to develop the record, the ALJ should have directed

the treatment notes typed where they were "of vital importance in the assessment

ORDER - 16

of plaintiff's medical condition" and the plaintiff had not responded to the ALJ's indirect request).

This error is not harmless. An error is harmful unless the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, Dr. Heap was the only treating physician to render an opinion and to opine Plaintiff had physical limitations restricting her ability to repeatedly use her right arm and hand. The vocational expert testified that limiting a right-hand dominant person to occasional handling and fingering would preclude Plaintiff's prior work and be "work preclusive" in the field of sedentary unskilled occupations. Tr. 61, 63. Based on this record, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit Dr. Heap's opinion.

On remand, the ALJ should seek further development of the record to resolve perceived inadequacies in the legibility of the treatment notes.

b. Plaintiff's Work Activity

The ALJ also accorded little weight to Dr. Heap's opinion because the clinical test results he described included reference to an electromyography (EMG) from January 2012 that showed conduction delay, yet Plaintiff worked for over a

ORDER - 17

1    year and half after the cited EMG.  Tr. 25.  "The ALJ may reject a medical opinion

2    that is inconsistent with the claimant's work activity."  *Schultz v. Berryhill*, No.

3    3:16-cv-00757-JR, 2017 WL 2312951, at *4 (D. Or. Apr. 21, 2017) (citing

4    *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 692-93 (9th Cir. 2009)).

5    Moreover, working with an impairment supports a conclusion that the impairment

6    is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

7         Here, Dr. Heap's acknowledgment of the EMG does not conflict with the

8    assessed limitations that Plaintiff would need to lie down during the day and would

9    miss work "because of exacerbation of neuropathic symptoms due to repetitive

10   motions."  Tr. 884-85.  The 2012 EMG cited by Dr. Heap showed entrapment of

11   the right median nerve at the wrist, consistent with a right carpal tunnel syndrome,

12   and conduction delay.  Tr. 541.  The EMG was performed, and Plaintiff was

13   cleared for work, over a year before Dr. Heap's opinion indicates the limitations

14   existed in April 2013.  Tr. 888.  As is the case "with slowly progressive

15   impairments, it is sometimes impossible to obtain medical evidence establishing

16   the precise date an impairment became disabling. . . ."  Social Security Ruling

17   (SSR) 83-20, 1983 WL 31249, *2 (S.S.A. 1983) (emphasis added).  Although

18   Plaintiff returned to work as a medical record auditor for a hospital, she claims

19   ongoing pain prevented her from meeting the productivity expectations of her work

20   which then ended in September 2013.  Tr. 42, 44-45.  Plaintiff's work activity took

ORDER - 18

place prior to Plaintiff's alleged date of onset.  Finally, besides the EMG, Dr.

Heap's opinion also referenced other relevant findings including Plaintiff's pain in

her right arm on "usage and touch."  Tr. 884.  Accordingly, Dr. Heap's reference to

the 2012 EMG study and Plaintiff's subsequent work history was not a specific and

legitimate reason to discount Dr. Heap's opinion in its entirety.

### 2. Dr. Shadrach

Dr. Shadrach, a psychologist, performed a psychological diagnostic

evaluation on January 17, 2016.  Tr. 810-15.  Dr. Shadrach diagnosed Plaintiff

with generalized anxiety disorder, with panic attacks.  Tr. 813.  Although Plaintiff

also reported problems with post traumatic stress disorder, Dr. Shadrach concluded

this self-diagnosis was not supported.  Tr. 814.  Dr. Shadrach opined Plaintiff's

sustained concentration and persistence "requires more mental effort and is limited

as evidenced by digit span backward of three (DSB=3 digits), which suggests

impaired concentration and working memory capacity."  *Id.*  In addition, she found

Plaintiff limited in social interaction and interpersonal relationships.  *Id.*  Dr.

Shadrach opined that Plaintiff's ability to adapt to routine changes in a typical

work setting was "likely to be impacted by increasing anxiety, panic attacks with

rage, poor concentration, and limited working memory capacity."  *Id.*  According

to Dr. Shadrach, the likelihood of Plaintiff's mental health improving within 12

ORDER - 19

months was "fair," as Plaintiff was willing to use available resources and consider

psychotherapy.  Tr. 813.

The ALJ gave this opinion "partial or limited weight."  Tr. 21.  Because Dr.

Shadrach's opinion was contradicted by the nonexamining opinions of Jan Lewis,

Ph.D., Tr. 80-81, and Jerry Gardner, Ph.D., Tr. 95-96, the ALJ was required to

provide specific and legitimate reasons for discounting Dr. Shadrach's opinion.

*Bayliss*, 427 F.3d at 1216.

a.  Inconsistencies with the Record

The ALJ discounted Dr. Shadrach's opinion because of "somewhat

conflicting or contradictory endorsements."  Tr. 21.  Relevant factors to evaluating

any medical opinion include the amount of relevant evidence that supports the

opinion, the quality of the explanation provided in the opinion, and the consistency

of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042;

*Orn*, 495 F.3d at 631.

Plaintiff contends the ALJ did not "explain any alleged inconsistencies."

ECF No. 16 at 5.  However, the Court disagrees.  The ALJ described three areas he

considered "conflicting or contradictory endorsements."  Tr. 21.  First, the ALJ

noted Dr. Shadrach's diagnosis of generalized anxiety with panic attacks was

based entirely on Plaintiff's self-report, Tr. 21, which contrasted with the lack of

other objective evidence, including the fact Plaintiff had never pursued any mental

health treatment (at that time) and there was "otherwise . . . no evidence of panic attacks." Tr. 21.  Given the illegibility of some of Dr. Heap's treatment records, it is difficult for the Court to verify this statement (though panic attacks are not mentioned in Dr. Heap's medical opinion, Tr. 884-86).  However, other than the clinical interview with Dr. Shadrach, Plaintiff does not identify other objective evidence in support of Dr. Shadrach's diagnosis of panic attacks.[4]  ECF No. 16 at 5.  The ALJ also contrasted the diagnosis of panic attacks with Dr. Shadrach's opinion that Plaintiff has the ability to perform simple and repetitive tasks and could follow complex instructions.  Tr. 21.  Second, the ALJ noted Dr. Shadrach had indicated Plaintiff's concentration and working memory capacity were impaired due to her digit span backward testing results, yet Dr. Shadrach also found Plaintiff had adequate immediate memory for simple concrete information and the good ability to retain and recall information after interference.  Tr. 21.  Third, the ALJ found that Dr. Shadrach's impression that Plaintiff had limited ability to socially interact was not supported by the explanation provided which was that Plaintiff had "no close friendships."  Tr. 21 (referring to Tr. 814).  As the

---

[4] It appears the only other mention of panic attacks in the medical record is in the December 2015 physical evaluation of Dr. Gaddy, which noted Plaintiff had described panic attacks "that appear work related."  Tr. 831.

ORDER - 21

ALJ acknowledged, Plaintiff was able to engage in daily activities, some of which would require social interaction.  Tr. 21 (describing cooking, grocery shopping, housekeeping, laundry, and taking care of her disabled sister).

When viewed in light of the whole record, the limitations opined by Dr. Shadrach were reasonably interpreted by the ALJ as both somewhat internally inconsistent and conflicting with the record as a whole.  Accordingly, this was a specific and legitimate reason to discount Dr. Shadrach's opinion.

b.  Likelihood of Improvement

Finally, that although Dr. Shadrach found Plaintiff was limited by her psychological condition, the ALJ noted that Plaintiff had never pursued any mental health treatment and Dr. Shadrach opined the likelihood of improvement in the next 12 months was "fair."  Tr. 21.  Temporary limitations are not enough to meet the durational requirement for a finding of disability.  20 C.F.R. § 404.1505(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months).  However, Dr. Shadrach's prognosis of "fair" reflects a prediction of future course or outcome of Plaintiff's condition based upon her amenability to psychotherapy treatment as recommended.  As Plaintiff alleged disability beginning September 13, 2013, optimism over future treatment is not a specific and legitimate reason to discount Dr. Shadrach's opinion.  However, because the ALJ identified other specific and legitimate reasons to discount Dr.

Shadrach's opinion, this error is inconsequential to the overall disability

determination and is therefore harmless.  *See Stout*, 454 F.3d at 1055.

**B. Step Two**

Plaintiff contends the ALJ erred in failing to find additional severe

impairments, including generalized anxiety disorder, several visual impairments,

medical epicondylitis, and chronic regional pain complex of the right arm and

hand.  ECF No. 14 at 15-16.

At step two of the sequential process, the ALJ must determine whether the

claimant suffers from a "severe" impairment, i.e., one that significantly limits her

physical or mental ability to do basic work activities.  20 C.F.R. §

404.1520(a)(4)(ii); 20 C.F.R. § 404.1522.  The ALJ must first determine whether

he or she has a medically determinable physical or mental impairment.  20 C.F.R.

§ 404.1521.  A medically determinable impairment "must result from anatomical,

physiological, or psychological abnormalities that can be shown by medically

acceptable clinical or laboratory diagnostic techniques."  20 C.F.R. § 404.1521.

Therefore, a physical or mental impairment must be established by objective

medical evidence from an acceptable medical source."  *Id.*  When considering

medically determinable mental impairments, the ALJ must first determine whether

such an impairment exists based on the claimant's "symptoms, signs, and

laboratory findings."  20 C.F.R. § 404.1520a(b)(1).  A claimant's "statement of

ORDER - 23

symptoms, a diagnosis, or a medical opinion" are not enough to establish a medically determinable impairment. 20 C.F.R. § 404.1521.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." SSR 85-28, 1985 WL 56856, at *3 (1985). Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522; SSR 85-28, 1985 WL 56856 (1985).[5]

When considering the severity of mental impairments, the ALJ considers the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: activities of daily living; social functioning;

---

[5] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 24

concentration, persistence or pace; and episodes of decompensation.  20 C.F.R.

Part 404, Subpt. P, App. 1, at 12.00(C).  Functional limitation is measured as

"none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If

limitation is found to be "none" or "mild," the impairment is generally considered

to not be severe.  20 C.F.R. § 404.1520a(d)(1).

Step two is "a de minimus screening device [used] to dispose of groundless

claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review

to the requirements of step two, [the Court] must determine whether the ALJ had

substantial evidence to find that the medical evidence clearly established that

[Plaintiff] did not have a medically severe impairment or combination of

impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

*1. Physical Impairments*

Plaintiff contends the ALJ erred by failing to find Plaintiff's vision problems

severe impairments at step two.  Plaintiff claims her vision problems prevented her

from performing her past relevant work due to her inability to look at her computer

screen for extended periods.  ECF No. 14 at 15 (citing Tr. 46, 871, 896).  In

discussing Plaintiff's vision problems, the ALJ found Plaintiff's visual acuity test

results did not indicate more than minimal effect on Plaintiff's ability to perform

basic work activities.  Tr. 21 (citing Tr. 804-09, 816-19, 869-77, 894-96).  While

the November 6, 2017 and May 8, 2018 eye examinations cited by Plaintiff

ORDER - 25

establish diagnoses, they do not establish these visual problems had any effect on Plaintiff's ability to work. ECF No. 14 at 15 (citing Tr. 871, 896). A mere recitation of medical diagnoses does not demonstrate how each of the conditions impacts Plaintiff's ability to engage in basic work activities. Thus, Plaintiff has not demonstrated that the ALJ erred as to Plaintiff's visual impairments.

Plaintiff also contends the ALJ erred in not concluding her medial epicondylitis and chronic regional pain complex of the right arm and hand were severe because they result in a limitation to occasional handling and fingering. ECF No. 14 at 16 (citing Tr. 793, 823, 884). Dr. Heap diagnosed Plaintiff with chronic regional pain complex of the right arm and hand, Tr. 884, and Dr. Ugorji diagnosed epicondylitis, Tr. 845. As noted above, Dr. Heap described Plaintiff as having arm pain from the elbow to right hand and "severe neuropathic symptoms," which were aggravated with use. Tr. 884-85. The ALJ's RFC did not include any right-hand limitations and permitted frequent handling and fingering. Tr. 22. The Court notes that this issue is related to the ALJ's evaluation of Dr. Heap's opinion. Given the error in evaluating the medical evidence, the Court directs that the ALJ reevaluate all of the Plaintiff's right upper extremity impairments and the step two findings on remand.

ORDER - 26

    2.  *Mental Impairments*

        Plaintiff contends the ALJ additionally erred at step two by finding

Plaintiff's generalized anxiety disorder with panic attacks a non-severe

impairment.  ECF No. 14 at 15.  Specifically, Plaintiff contends that the

assessments of Dr. Shadrach (Tr. 810-14) and Deborah Smith, Ed.M./LMHC (Tr.

897-901, 911-22) establish harmful error at step two where associated mental

limitations were not included in the RFC.  ECF No. 14 at 15; ECF No. 16 at 7.

Plaintiff contends the evidence satisfying her burden of proving a severe mental

impairment includes evidence she suffers from symptoms of irritability, frustration,

tearfulness, angry outbursts, and limitations in concentration, working memory,

and interacting with others.  *Id.*

        The ALJ concluded Plaintiff's anxiety did not cause more than minimal or

temporary limitations in Plaintiff's ability to perform basic mental work activities.

Tr.  21.  In concluding Plaintiff's mental impairment was non-severe, the ALJ

analyzed and discounted the assessments of Dr. Shadrach and Ms. Smith, as well

as the state agency physicians whom the ALJ noted had "simply indicated that

[Plaintiff] had no friends and tended to be opinionated and irritable, with Dr.

Gardner adding that she was best suited for isolated work with limited contact with

coworkers, supervisors, and the general public."  Tr. 21-22.

ORDER - 27

In finding Plaintiff's anxiety was non-severe, this type of error is ordinarily harmless where the ALJ otherwise proceeds with the sequential analysis. However, because the ALJ did not identify any severe mental impairment or mental limitations the Court must consider whether harmful error exists. As explained above, the ALJ properly discounted the assessment of Dr. Shadrach based upon inconsistencies with the record. Plaintiff does not challenge the ALJ's findings as to the opinions of the state agency psychological consultants and Ms. Smith. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."). Accordingly, the Court concludes the ALJ's step two analysis as to Plaintiff's mental impairments was sufficient.

**C. Other Challenges**

Plaintiff raises several other challenges to the ALJ's evaluation of the psychological opinion evidence and Plaintiff's symptom claims, as well as the ALJ's analysis at steps three, four, and five. ECF No. 14 at 22. The Court declines to address these challenges here given the ALJ's reversible error and need to further develop the record.

ORDER - 28

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 21. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.

ORDER - 29

*Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary to allow the ALJ to develop the record further regarding Dr. Heap's treatment notes.  The ALJ's finding of illegibility prevents the Court from determining whether the medical evidence was properly evaluated at step two and subsequent steps of sequential evaluation.  As discussed *supra*, Dr. Heap opined that Plaintiff's limitations would result in her having to lie down during the day because of "fatigue, pain the arm, and narcolepsy symptoms" and would result in her missing four or more days of work a week because of "exacerbation of neuropathic symptoms due to repetitive motion."  Tr. 884-85.  These qualifications were neither offered by the examining physicians, Dr. Gaddy (Tr. 804-08) and Dr. Ugorji (Tr. 820-26), nor the reviewing physicians, Dr. Packer (Tr. 852) and Dr. Irwin (Tr. 93-95).  Further proceedings are necessary to properly evaluate the medical opinion evidence.  Furthermore, even if all three credit-as-true prongs were met, remand for further proceedings would still be appropriate as the record creates doubt as to whether Plaintiff is, in fact, disabled.

Accordingly, the Court remands this case for further proceedings consistent with this Order. On remand, the ALJ is instructed to develop the record regarding the legibility of Dr. Heap's treatment notes, reconsider the medical evidence, and conduct a supplemental hearing. The ALJ shall perform the five-step inquiry anew.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15,** is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 20, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 31